905 P.2d 205

STATE of New Mexico, ex rel. CHILDREN, YOUTH AND FAMILIES DEPARTMENT, In the Matter of Charles F., III, Kimberly, Brianna and David F., Children, and Concerning Debbie F. and Charles F., II.

State of New Mexico, ex rel. Children, Youth and Families Department, Petitioner–Appellant,

v.

DEBBIE F. and Charles F., II, Respondents–Appellees.

No. 16220.

Court of Appeals of New Mexico.

Sept. 8, 1995.

Certiorari Denied Oct. 26, 1995.

Tom Udall, Attorney General, Angela L. Adams, Chief Children's Court Attorney, Children, Youth and Families Department, Diane M. Garrity, Special Assistant Attorney General, Children, Youth and Families Department, Santa Fe, U. Edward Schissel, Regional Children's Court Attorney, Children, Youth and Families Department, Las Cruces, for Petitioner–Appellant.

Jefferson R. Rhodes, Burroughs & Rhodes, Alamogordo, for Respondent–Appellee Debbie F.

Nina Lalevic, Dutton & Hakanson, Ltd., Alamogordo, for Respondent–Appellee Charles F., II.

## OPINION

FLORES, Judge.

1. The Children, Youth and Families Department (the Department) appeals the dismissal of its abuse and neglect petition for lack of subject matter jurisdiction. The district court determined that because the alleged acts of abuse and neglect took place at Holloman Air Force Base, a federal enclave, the State could not exercise its jurisdiction in order to apply the provisions of the New Mexico Children's Code, NMSA 1978, §§ 32A–1–1 to –20–1 (Repl.Pamp.1993). We hold that the State may exercise its jurisdiction and apply the provisions of the Chil-

dren's Code to those who reside on a federal military enclave. Accordingly, we reverse.

*FACTS*

2. The facts are uncontested. The Department's Protective Services received a referral from the Family Advocacy Office of Holloman Air Force Base, concerning possible physical and sexual abuse of two children who lived at the base. The allegations of abuse were confirmed through coordinated investigation by personnel from both the Air Force and the Department. The Department's Family Preservation Services were offered to the family and were accepted. However, before the services were completed, Air Force authorities notified the Department that the mother was going to take her children and leave for California. The Department immediately filed an abuse and neglect petition. At the hearing on the petition, the district court expressed its concern about its subject matter jurisdiction since the alleged abuse and neglect occurred on a federal enclave. After consideration of the matter, the district court entered an order of dismissal, contending that it did not have subject matter jurisdiction. The Department appeals from this order.

*DISCUSSION*

3. In 1953, the State of New Mexico ceded certain of its land to the United States government for the purpose of establishing Holloman Air Force Base. NMSA 1978, § 19–2–11 (Repl.Pamp.1994); *see also* U.S. Const. art. I, § 8, cl. 17. In so doing, it stated that exclusive jurisdiction was ceded to the United States, reserving only the right to serve civil and criminal process. Section 19–2–11. No reservations regarding jurisdiction pursuant to the Children's Code were made and there was no grant by the federal government of such jurisdiction.

■ 4. The United States Constitution provides under Article I, Section 8, Clause 17 that Congress has the power to exercise exclusive legislation over all places purchased by the United States with the consent of a state legislature. This power can be limited by the state reserving some of its jurisdiction in the legislation granting consent to the federal acquisition, *see James v. Dravo Contracting Co.*, 302 U.S. 134, 142–49, 58 S.Ct. 208, 212–16, 82 L.Ed. 155 (1937), or by congressional grant of jurisdiction to the state. *See Offutt Hous. Co. v. County of Sarpy*, 351 U.S. 253, 256–57, 76 S.Ct. 814, 817, 100 L.Ed. 1151 (1956) (Congress can give states power to tax on federal enclaves). Although a state's failure to reserve jurisdiction together with the federal government's failure to grant that state jurisdiction has been relied on as the basis for invalidating state taxes, licensing requirements, and price regulations on federal enclaves, the more recent trend is to examine the state law to be applied to determine whether it interferes with federal sovereignty. *In re Terry Y.*, 101 Cal.App.3d 178, 161 Cal.Rptr. 452, 453–54 (Ct.App.1980). Therefore, rather than relying on a strict construction of the law ceding jurisdiction to the federal government, the courts today are more concerned with the reality of the relationship between the state and federal government in those areas belonging to the federal government, but located within state boundaries. *Board of County Comm'rs v. Donoho*, 144 Colo. 321, 356 P.2d 267, 273 (1960) (en banc). "The fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal area within its boundaries, so long as there is no interference with the jurisdiction asserted by the Federal Government." *Howard v. Commissioners of the Sinking Fund*, 344 U.S. 624, 627, 73 S.Ct. 465, 467, 97 L.Ed. 617 (1953).

■ 5. The "exclusive jurisdiction" provided for in the United States Constitution, art. I, § 8, cl. 17, is not an absolute prohibition against the application of state laws. Rather, its purpose is to protect the federal government against conflicting regulations. *See Penn Dairies v. Milk Control Comm'n*, 318 U.S. 261, 270–71, 63 S.Ct. 617, 621, 87 L.Ed. 748 (1943); *James*, 302 U.S. at 148–49, 58 S.Ct. at 215–16 (where reservation of concurrent jurisdiction by state does not deprive United States of its intended use of the acquired property, reservation is effective). Therefore, in those areas such as public schooling, voting, and welfare benefits, where the federal government has failed to exercise jurisdiction, the states may act even though the area or persons over which they

assert jurisdiction are located on a federal enclave. *See In re Terry Y.,* 161 Cal.Rptr. at 453.

6. Public welfare is an area, in particular, that the federal government has not only failed to regulate, but has specifically mandated that the states regulate. In *Board of Chosen Freeholders v. McCorkle,* 98 N.J.Super. 451, 237 A.2d 640, 645 (Law Div.1968), the New Jersey Superior Court determined that the state laws for "public welfare should be applied to federal enclaves within the state," since "the state is best fitted to know the requirements of its particular locality and [how] to deal with them." With regard to both dependent and neglected children and the commitment and care of mentally ill residents of federal enclaves, the *McCorkle* Court asserted that the state laws must apply since there is no federal regulation of these matters. *Id.* 237 A.2d at 644–45.

■ 7. Where the federal government has provided money to the states to establish, extend, and strengthen child welfare services and has mandated that those services be made available to all political subdivisions of the state, it has indicated a strong policy in favor of protection of children. *See* 42 U.S.C. §§ 620–626 (1988 & Supp. V 1993). Therefore, it seems illogical to conclude that there is interference when the state is carrying out a program contemplated by federal statute. *See Donoho,* 356 P.2d at 272–73 (conferring a benefit required by federal law cannot be construed as an act which undermines federal sovereignty). In *Terry Y.,* the California court held that the application of its Welfare and Institutions Code to children on a federal enclave was a benefit to children and one in accord with the policy of the United States. 161 Cal.Rptr. at 454. The same is true of our Children's Code.

8. Even if we disregard the fact that Congress has mandated that the states act with regard to children's welfare, there is nothing here showing that the State's actions under the Children's Code interfere with the sovereignty of the federal government. The federal government takes no action with regard to protection of abused and neglected children. The military courts do not have jurisdiction over such matters. Unless the State acts to protect these children, they are left without any governmental protection.

Such a vacuum must be filled. The State is best fitted for such a role as it understands the needs of the children within its borders and knows best how to address those needs. *See McCorkle,* 237 A.2d at 645. Further, it appears here that the base personnel and state officials have an informal agreement with regard to suspected abused or neglected children, in that base personnel actively seek the state's jurisdiction. Under those circumstances, we cannot say that the application of the provisions of the Children's Code to children located on a federal military base interferes with the exercise of the federal government's sovereignty.

■ 9. Because the Children's Code does not interfere in any way with federal jurisdiction, the Department has the power to act under the Code's dictates in order to protect children on federal enclaves suspected of being abused or neglected. We do not believe that New Mexico precedent dictates otherwise. *Arledge v. Mabry,* 52 N.M. 303, 317–18, 197 P.2d 884, 892–93 (1948), held that residents living on a federal enclave were not "in New Mexico" for purposes of qualifying to vote. In relying on old federal case law, *Arledge* narrowly construed the concept of exclusive federal jurisdiction on federal enclaves. *Id.* at 313–14, 197 P.2d at 890. The United States Supreme Court has pointed to *Arledge* as one of a number of "early cases" that were decided when there was a considerably different relationship between federal enclaves and states. *Evans v. Cornman,* 398 U.S. 419, 423 & n. 3, 90 S.Ct. 1752, 1755 & n. 3, 26 L.Ed.2d 370 (1970). The *Evans* Court stated that there were no longer any significant differences between enclave residents and residents of the states in which the enclaves are located. The court concluded that the Fourteenth Amendment gave enclave residents the right to vote in state elections. *Id.* at 425–26, 90 S.Ct. at 1756–57. There is also no longer a viable notion of a state within a state, as *Arledge,* 52 N.M. at 318, 197 P.2d at 893, suggested. There is, rather, a recognition of a dual relationship between a state and the federal government regarding federal enclaves in that state with accommodation and cooperation as the aim of that relationship. *Howard,* 344 U.S. at 627, 73 S.Ct. at 467. Therefore, we do not believe that *Arledge* provides reliable precedent for a

determination regarding the application of the Children's Code to federal enclaves.

10. Here, the parents argue that exclusive jurisdiction means an absolute prohibition against any state law being applied on the federal enclave. As we discussed above, we decline to interpret the term "exclusive jurisdiction" in such a way. Further, they argue that because there is a provision in state law for having the United States relinquish jurisdiction over certain matters with regard to federal enclaves, NMSA 1978, § 19–2–2 (Repl.Pamp.1994), that is the sole means for the State to acquire jurisdiction over those enclaves. We do not believe that is the case. We believe that the statute is directed toward those areas of the law where exercise of jurisdiction by the state will interfere with federal sovereignty, i.e., those areas where the federal government has asserted jurisdiction by enactment of federal laws. This is particularly true of law enforcement matters. For example, if the State were to exercise its criminal jurisdiction over federal enclaves, it would probably be interfering with the criminal jurisdiction asserted by the federal government. Therefore, in order for the State to exercise its jurisdiction over such matters, jurisdiction must first be relinquished by the federal government.

11. However, in those areas where the federal government has no laws or regulations, there is no interference by the State when it asserts its jurisdiction. Therefore, there would be no need for the federal government to relinquish its jurisdiction over such matters. We do not believe that Section 19–2–2 prohibits the exercise of State jurisdiction in federal enclaves, absent formal relinquishment by the federal government under this statute.

*CONCLUSION*

12. The district court's order of dismissal is reversed and the matter remanded to continue proceedings under the Children's Code.

13. IT IS SO ORDERED.

ALARID and WECHSLER, JJ., concur.